NANCY P. MANN, ADMINISTRATRIX OF THE ESTATE OF ALBERT MURRY MANN, DECEASED v. WILLIAM M. HENDERSON, D/B/A MANTEO AIRPORT, MANTEO, NORTH CAROLINA, AND THE WEST VIRGINIA PULP AND PAPER COMPANY, A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE AND DOMESTICATED TO DO BUSINESS IN THE STATE OF NORTH CAROLINA.

(Filed 26 February 1964.)

**1. Aviation § 5—**

Under Federal regulations, a pilot is in command of the aircraft flown by him and nothing short of physical interference by a passenger will remove the pilot from control, notwithstanding the passenger has contracted with the pilot's employer for the service.

**2. Same; Evidence § 2—**

Federal regulations are made applicable to intrastate flying by G.S. 63-20, and such Federal regulations as are applicable are binding on the State courts and will be given judicial notice by them.

**3. Death § 3—**

Any recovery for wrongful death must be based on actionable negligence under the general rules of tort liability.

**4. Aviation § 5; Negligence § 5—**

It being common knowledge that airplanes do fall without fault of the pilot, the doctrine of *res ispa loquitur* does not apply to an airplane crash, but in order to support recovery there must be evidence of negligence constituting a proximate cause of the accident.

**5. Aviation § 5— Allegations held to leave in conjecture the cause of airplane crash, and demurrer was proper in action for wrongful death.**

Allegations to the effect that a flying service was employed to aid in fighting a forest fire, that after two days of flight a pilot was requested by an official of the lumber company to fly him around the fire for a last look, that the pilot was warned by his superior by radio of a weather front moving in, and that shortly thereafter the plane crashed, fatally injuring the pilot, *held* insufficient to state a cause of action for the wrongful death of the pilot, since the facts alleged leave in conjecture whether the crash resulted from want of proper instructions to the pilot, pilot error, adverse flying conditions, mechanical defect, an improperly maintained airfield, or otherwise.

APPEAL by plaintiff from *Peel, J.,* October, 1963 Session, HYDE Superior Court.

The plaintiff, as administratrix, instituted this civil action against the defendants to recover damages for the wrongful death of her husband, Albert Murry Mann. The complaint covers eight pages of the record. Much of it is devoted to a recital of evidence and to a statement of conclusions. The ultimate facts alleged, in so far as they control decision, are discussed in the opinion.

The defendants filed separate demurrers, each upon the same grounds: (1) The complaint fails to allege facts sufficient to constitute a cause of action; (2) the facts alleged show contributory negligence of the plaintiff's intestate as a matter of law; (3) there is a misjoinder of parties and causes.

The court entered judgment sustaining the demurrers, subject to the right of the plaintiff to amend. She excepted and appealed.

*Bryan Grimes, John A. Wilkinson for plaintiff appellant.*

*Rodman & Rodman by Edward N. Rodman for defendant West Virginia Pulp and Paper Company, appellee.*

*McCown & McCown by Wallace H. McCown for defendant Henderson, appellee.*

HIGGINS, J. The plaintiff's intestate was a licensed pilot with 90 hours of flying time. On and prior to April 25, 1961, he was employed as a service attendant, mechanic's helper, and pilot by the defendant Henderson who at the time was operating a taxi or charter flying service under the trade name, "Manteo Airport." The defendant West Virginia Pulp and Paper Company owned a large tract of timber lands in Dare and Tyrrell Counties. Near these lands it maintained a landing strip for the use of planes on fire patrol.

On April 25, 1961, Pulp and Paper employed Henderson to assist in fighting a fire out of control on its lands. Early on that day Henderson and Mann flew from Manteo to the company's landing strip. Thereafter, throughout the day, Henderson flew the company's heavy fire fighter plane, dumping water on the flames. At the same time, Mann in one of Henderson's light planes, usually carrying J. D. Earle, a high official of Pulp and Paper, made numerous reconnaisance flights for Earle's benefit. These operations continued throughout the day.

The following day the same procedures were followed until about 4:30 in the afternoon. At this time Henderson and Mann were preparing to fly back to Manteo. However, Earle requested Mann to fly him around the fire for a last look. Henderson consented. Immediately thereafter, Mann's plane left for the area of the fire with Earle as a passenger. At the same time, Henderson, in another plane, left for Manteo. At this time the fire covered a front of three or four miles. Smoke extended to the northeast for at least 50 miles. The landing field was south of the fire.

Apparently, after the planes became airborne, Henderson observed a weather front or thunderstorm to the northwest. He called Mann over the two-way radio and gave this instruction: "Don't fly that direction too

far—it don't look so good." Earle responded over the radio, "We won't fly very far that way, we won't fly too far." About 60 seconds later Henderson, observing that Mann's plane had not changed course, called again and talked to Earle, directed that the plane "head toward the south and come out of that mess—it looks very black over that way." Earle replied, "We are under it." After the foregoing conversation Henderson flew on to Manteo, having failed to establish further communication with Mann's plane, though he made an unsuccessful effort to do so after landing in Manteo. Not having been able to communicate with the plane, he again left Manteo and flew back in search without alerting the ground crew that he had lost contact with Mann. A short time thereafter the wrecked plane was discovered near a landing strip south of Columbia in an area obscured by smoke. The passenger Earle was killed and the pilot Mann was fatally injured.

The plaintiff alleged that Henderson was negligent in that (1) he should have refused permission for this last flight because of the pilot's lack of experience and of the increased hazards created by the spread of the smoke and the approaching weather front; (2) after Mann's plane took off, Henderson did not give his pilot explicit orders to change direction and fly to Manteo instead of merely cautioning him not to fly too far in the direction of the fire; (3) after observing the plane had not changed course after the first conversation, Henderson delayed 60 seconds or more before reestablishing communication and giving explicit orders to leave the scene of the fire and storm; (4) he failed to give the agents of the Pulp and Paper Company notice Mann's plane was missing rather than confining his rescue efforts to an air search. Upon these allegations the plaintiff seeks to hold the defendant Henderson responsible for the crash of the plane and the pilot's death.

The plaintiff alleged that the Pulp and Paper Company was negligent in that its official and agent, Earle, assumed direction of the plane and caused the pilot, Mann, to fly into the smoke and storm when it was extremely dangerous to do so; and that Earle's reply to Henderson's admonition, "Don't fly that direction too far," and Earle's response, "We won't fly very far that way," disclosed that Earle thereby had assumed responsibility for the flight which resulted in the death both of himself and Mann. Upon these allegations the plaintiff seeks to hold the defendant West Virginia Pulp and Paper Company responsible for Mann's death.

The case is unusual in that the pilot's administratrix seeks to hold both his employer and his passenger's employer responsible for the fatal crash. Mann was a licensed pilot. He had flown around the fire for two days. As pilot, he was in charge of, and responsible for, the operation of

his plane. The plaintiff's conclusion that Earle assumed responsibility for the flight is not supported by the facts alleged. It would seem that nothing short of physical interference with Mann's operation of the plane would remove the pilot from actual control. "The pilot in command of the aircraft shall be directly responsible for its operation and shall have final authority as to the operation of the aircraft." Code of Federal Regulations, No. 14, § 60.2. These rules are specifically made applicable to intrastate flying in North Carolina by G.S. 63-20. In this connection courts hold: "Federal laws and regulations where applicable, are, of course, binding on state courts and subject to judicial notice by state courts." *Lange v. Nelson-Ryan Flying Service,* 259 Minn. 460, 108 N.W. 2d 428; *Martin v. Norris,* 188 Md. 330, 52 A. 470; *Morrison v. Hutchins,* 158 Kan. 123, 144 P. 2d 922; *Hough v. Rapidair* (Mo. 1957) 298 S.W. 2d 378.

Any recovery for wrongful death must be based on actionable negligence under the general rules of tort liability. "In a case involving an airplane crash the doctrine of *res ipsa loquitur* does not apply, 'it being common knowledge that airplanes do fall without fault of the pilot.' Furthermore, there must be a causal connection between the negligence complained of and the injury inflicted." *Jackson v. Stancil,* 253 N.C. 291, 116 S.E. 2d 817; *Bruce v. Flying Service,* 231 N.C. 181, 56 S.E. 2d 560; *Smith v. Whitley,* 223 N.C. 534, 27 S.E. 2d 442; G.S. 63-15, G.S. 63-16.

When tested by the foregoing rules, the complaint is fatally defective in that it fails to allege any fact from which negligence on the part of either defendant may be inferred as a proximate cause of the crash. Whether it resulted from pilot error, adverse flying conditions, mechanical defects, improperly maintained airfields, or otherwise, is left to conjecture. In order to hold either defendant, the complaint should charge such defendant with some act of negligence which proximately caused, or contributed to, the fatal result. Hence the complaint fails to allege a cause of action. Questions whether the second and third grounds for the demurrers are valid do not arise on this record. The judgment sustaining the demurrers is

Affirmed.