Jack Michael HALEY, Administrator of
the Estate of Patrick Shawn
Haley, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Betty M. HENNINGS, Administratrix of
the Estate of John T. Hennings and
Belinda D. Hennings, Administratrix of
the Estate of Howard D. Hennings,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. Nos. A–C–85–128, A–C–85–371.

United States District Court,
W.D. North Carolina,
Asheville Division.

Feb. 20, 1987.

Moretz & Stephenson by J. Douglas Mortez and Jonathan Silverman, Sanford, N.C., for plaintiffs Haley and Hennings.

Richard K. Willard, Asst. Atty. Gen., Civ. Div., Torts Branch, Wendy L. Rome, Trial Atty., U.S. Dept. of Justice, Civ. Div., Torts Branch, Washington, D.C., U.S. Atty. Charles R. Brewer, Asst. U.S. Atty., Clifford C. Marshall, Asheville, N.C., Mark B. Baylen, F.A.A., Washington, D.C., for defendant.

## MEMORANDUM OF DECISION

SENTELLE, District Judge.

These cases arise out of a tragic air crash of February 22, 1983, near Asheville, North Carolina. The plane which crashed was a Comanche PA–24 designated N6313P (hereinafter referred to as 13 Papa).[1] John T. Hennings and Howard G. Hennings, plaintiffs' intestates in A–C–85–371, chartered a plane in Sanford, North Carolina, on the morning of the day of the crash and hired Patrick Shawn Haley, plaintiff's intestate in A–C–85–128, to fly them to several locations in both Carolinas inclusive of Asheville as their last stop before a return flight home to Sanford that night. They left the ground in Asheville shortly after 6:30 PM, EST, or 2330 GMT.[2] At approximately 2350:47, 13 Papa made its last recorded radio transmission and crashed on a wooded hillside killing all on board.

### I.

Each of the occupants of 13 Papa brought suit against the United States;

---

1. This aircraft is referred to as a Cherokee in the original pleadings in each case, however, this reference is an apparent error as all evidence designates it as a Comanche.

2. GMT (Greenwich Mean Time) or "Zulu" Time will be used hereinafter to correspond with certain exhibits and testimony in the case. A brief glossary of other aeronautic jargon used herein appears as Appendix "A" to this opinion.

their actions were consolidated upon motion of the plaintiffs and the trial ensued before the undersigned sitting without a jury pursuant to 28 U.S.C. § 2402. In each complaint, plaintiffs allege twenty-nine acts of negligence on the part of the United States acting through the air traffic controllers (ATC's) at Asheville Regional Airport. The United States in defense denies negligence and proximate cause and affirmatively defends against Haley on the basis that his own negligence or contributory negligence was the sole or a joint proximate cause of the crash. As against the Hennings brothers, the United States defends, again, on the general denial and on the theory that they were independently contributorially negligent or that the contributory negligence of Haley should be imputed to the Hennings brothers.

█ As to any inflight negligence by Haley, the imputation theory is apparently not well taken. As is pointed out in *Mann v. Henderson*, 261 N.C. 338, 341, 134 S.E.2d 626, 628 (1964), " 'The pilot in command of the aircraft shall be directly responsible for its operation and shall have final authority as to the operation of the aircraft.' " (Citing 14 C.F.R. § 60.2) The North Carolina court further notes that the quoted federal regulation is made applicable to all flights in North Carolina by state statute (citing NCGS § 63–20). While 14 C.F.R. § 60.2 has been superseded since the *Mann* decision, the same language is now incorporated in 14 C.F.R. § 91.3. Since North Carolina law applies to the determination of this case under the Torts Claims Act, *see e.g. Nolan v. United States*, 186 F.2d 578 (4th Cir.1951), no in-flight negligence of Haley can be imputed to the brothers Hennings. "[N]othing short of physical interference with [the pilot's] operation of the plane would remove the pilot from actual control." *Mann v. Henderson, supra,* 261 N.C. at 341, 134 S.E.2d at 628. However, for reasons that will appear from the later findings and conclusions contained in this Opinion, the viability of the imputation theory is immaterial to the result in any event.

## II.

From the evidence at trial, plaintiffs' serious allegations of negligence center around the following:

(1) The ATC's re-routing of 13 Papa from its original flight plan direct Charlotte direct Sanford to a new flight plan VIA Spartanburg VOR.

(2) The failure of the ATC's to provide certain weather information to the pilot of 13 Papa.

(3) The failure of the ATC's to provide vectors to land at Asheville during the emergency.

The government's allegations of contributory negligence center around:

(1) The decision by all three plaintiffs to leave the ground at Asheville under the adverse conditions existing at the time of take-off.

(2) The failure of Haley to properly respond to the drop in manifold pressure which led to the power outage causing the crash.

The Court's findings and conclusions with regard to these cross allegations will be made in approximate order of their occurrence in time.

## A.

█ Pat Haley flew 13 Papa out of the Asheville Airport at approximately 2330:00 after having been on duty for twelve hours during a great part of which he was engaged in the actual flying of his airplane. At the time of take-off, it was raining and clouded; conditions were IFR; and it was dark. The plane had but a single engine and the flight was over mountainous terrain. The Court finds as a fact that a reasonably prudent pilot would not have commenced the flight after twelve hours of fatiguing duty in the conditions that prevailed on that night in a single engine airplane. The Court holds that this negligence is also attributable to the Hennings brothers not by imputation but as independent negligence since they as private pilots had sufficient knowledge to have formed an adequate opinion of their own as to the unsafe nature of the undertaking. Anoth-

er district court in a similar fact situation where a private pilot flew as passenger to a more highly qualified pilot in adverse weather conditions noted that to. obtain a private pilot's certificate, a pilot "[H]ad to demonstrate the ability to recognize critical weather situations, both from the ground and in-flight." *Burchett v. United States,* 19 Av. Cas. (CCH) 18440, 18441 (1986). This is established by the evidence in the present case and required by the provisions of 14 C.F.R. § 61.105(3).[3] Given this status of the law and regulations and the facts of the instant case, the Court finds as a matter of fact that the passenger plaintiffs did not exercise due care in undertaking the flight under all the conditions above described. While these findings are potentially dispositive of the case, the Court is unable to find by the greater weight of the evidence that this negligence was in fact a proximate cause of the accident. While there is some evidence from the government's expert testimony to the effect that this was the case, it lacks the convincing force attributable to the intervening causes which will be further discussed later in this opinion concerning the specific acts of negligence that led directly to the fatal crash.

### B.

Approximately six minutes after 13 Papa's radio transmission to the Asheville ATC, that ATC requested 13 Papa to change from it's original flight plan to the routing direct Spartanburg VOR direct Sand Hill. Haley immediately accepted the change in routing. Plaintiffs' first contentions of negligence on the part of the ATC cluster around this re-routing accepted by Plaintiff Haley. Plaintiffs first contend that the re-routing itself was negligence on the part of the ATC but expert opinion testimony differed widely on whether it was or not. Plaintiffs' arguments on this point are of two sorts: first, that the ATC had not provided Haley with adequate weather information prior to proposing the re-routing and; second, that the re-routing

suggestion was negligence in and of itself in that it directed 13 Papa into heavier weather which was in turn the cause of the engine failure resulting in the triple fatality. The Court finds that the ATC (at that time trainee Valerie Setzer) was not negligent and that, if she had been, such negligence could not have been the proximate cause of the accident.

■ While plaintiffs' evidence would support a finding that the original route was safer than the re-routing furnished by Setzer, this is not sufficient to base a recovery as North Carolina law applies traditional rules of negligence to air crash cases. "Any recovery for wrongful death must be based on actionable negligence under the general rules of tort liability. 'In a case involving an airplane crash.... there must be a causal connection between the negligence complained of and the injury inflicted.'" *Mann v. Henderson, supra,* 261 N.C. at 341, 134 S.E.2d at 629. (Citations omitted.) In this case, the greater weight of the evidence does not support either a finding of lack of due care or that such negligence, if it were negligence, was the proximate cause of the accident. The Court finds that substantially all weather information available to the ATC was available to Pat Haley through weather briefings which he received or should have been expected to receive prior to take-off; that the weather in the area into which he was re-routed was substantially the same as the weather he should have expected from weather briefings; and that the weather in the entire relevant flight area was substantially the same. It is true that plaintiffs' weather expert testified both competently and credibly that weather was clearing to the east (in the path of the original flight plan) and would have been VFR east of Rutherfordton. However, plaintiffs' evidence does not support a conclusion that 13 Papa would have cleared the adverse weather conditions soon enough to have averted the engine failure and resultant crash.

---

**3.** This Court recognizes that the *Burchett* case is neither binding authority nor factually on all fours with the case at bar. Nonetheless, the reasoning is applicable to these facts.

## C.

Plaintiffs' second collection of negligence allegations concern the alleged failure of the ATC's to provide 13 Papa with vectors to the Asheville Airport during the emergency. In the order in which portions of the ATC transcript came into evidence piecemeal, it might appear at first blush that these allegations are well taken. However, the transcript itself provides a very different picture when taken as a whole.[4] 13 Papa communications first appear in the transcript at 2333:06. The re-routing to direct Spartanburg direct Sand Hill was suggested by ATC at 2339:43. At 2339:51, 13 Papa accepted the re-routing. At 2344:16, 13 Papa communicated a desire to clear the bad weather as soon as possible. This communication was not accurately read by the ATC who requested a repeat or "say again" at 2344:27 and at 2344:48 reported that there was rain everywhere. At 2346:47, 13 Papa communicated that "We can't [maintain] altitude, got a power loss." Again, this was an unclear transmission and at 2346:56, the tower requested that 13 Papa "Say again." Finally at 2347:01 and 07, 13 Papa made the clear transmission of difficulties which put the ATC on notice as to potential emergency. At 2347:19, the ATC requested 13 Papa to advise as to the source of the difficulty, "turbulence or icing or what?", and at 2347:24, 13 Papa reported that Haley "believe[d] it's just water, sucking in water," but again reported a loss of manifold pressure from the expected 23 inches down to 14 inches. At 2347:37, 13 Papa requested ATC to "vector me towards an airport close by."

This is the initial foundation of the allegations of negligence concerning failure to give vectors to the Asheville Airport. It should be noted in connection with this evidence that the last communication of 13 Papa was at 2350:47 when 13 Papa reported, "... we're going to have to take it in straight ahead, we're in the rain, can you give me an elevation out here?" This followed a communication at 2350:33 which had closed with the words, "We're going down." Therefore, the time window for negligence or due care on the part of the ATC is from, at most, 2347:37 to 2350:47 for a total of 3 minutes and 10 seconds, even allowing no time for the communication of the words contained in the 2347:37 transcript which appears to have consumed approximately six seconds given the time lapse between that communication and the next response from ATC. However, when the entire transcript is reviewed, the time window is much smaller, as will appear later in this Opinion.

■ Plaintiffs' contention is that the ATC's committed negligence proximately causing the crash by their failure to provide vectors to the Asheville Airport. Plaintiffs' problem is that following the 2347:37 communication, the ATC did in fact commence the giving of vectors back to Asheville in the above referenced 2347:43 transmission. At this point, the supervising ATC, Buddy Cutshall, had taken over from the trainee and commenced the giving of vectors with "Comanche 13 Papa, Asheville approach, your, uh, 7 SE of the Asheville Airport, uh, and you turn right heading 300, vector back to the Asheville Airport, and, keep us advised of your altitude." The Court finds that plainly this was in the exercise of due care even by the standards sought by plaintiffs in that the ATC did in fact begin vectoring the airplane back to the Asheville Airport. This vectoring process continued in a 2348:04 communication, however, at 2348:28, 13 Papa changed his request stating that he had contact with the ground and would "like to stay out here." The ATC in the response communication made sure that this was what 13 Papa wanted and then ceased giving vectors to the Asheville Airport consistent with the pilot's desires.

---

**4.** While two versions of the transcript came into evidence, the differences between them are not material to any finding upon which the conclusions of law herein are based. A composite text of all communications of both transcripts involving 13 Papa appears at Appendix "B" to this Opinion.

■ Even by the standards of plaintiffs' experts, this is in compliance with the duty to exercise due care. It was not until 2349:08 that 13 Papa again requested vectors for an ASR in a communication that lasted approximately eight seconds. With the eight-second transmission allowance, this is one minute and 17 seconds before the penultimate communication of 13 Papa when the pilot told the tower, "We're going down." It is within this time window that ATC's negligence, if any, must be judged. At 2349:16 in the communication responding to the 2349:08 request for vectors, instead of giving those vectors, the ATC described for Haley the location of the Hendersonville Airport which was one and one-half miles from Haley's location as opposed to the six and one-half miles to the Asheville Airport. Plaintiffs contend, correctly, that this was a failure to exercise due care since the ATC did not know whether the lights were on at Hendersonville; did know that visual flight rules were not in effect; and did not know how to tell the pilot how to ascertain if the lights were on at Hendersonville or turn them on.[5] Making that suggestion instead of giving the requested vectors did constitute a failure to exercise due care.

### D.

■ This finding of negligence, however, is not dispositive of plaintiffs' claim. Obviously, in order for plaintiffs to recover they must establish not only that the ATC was negligent, but also that this negligence was a proximate cause of the crash. This they have not done. Even had the ATC commenced communication of the vectors and completed the same successfully, the time available is still only from 2349:16 to 2350:33, or one minute, 17 seconds at most. Even taking plaintiffs' expert testimony and ignoring defendant's, in giving the plaintiffs every favorable inference available, and even allowing no time to be consumed for the communication of the vectors themselves and to execute them, this is far less than half the time necessary to fly from the then location of 13 Papa to the Asheville Airport.[6]

■ Plaintiffs' theory of proximate cause is not that a crash would have resulted but for defendant's failure to communicate the vectors, but rather that the terrain under the crash would have been less dangerous and, therefore, the potential for a survivable crash landing was greater if the vectors had been given. In this connection, plaintiffs stress the availability of Interstate 26 as a possible crash landing site had the vectors been given. Plaintiff, however, has demonstrated nothing as to the traffic conditions on I–26 on that night and the evidence plainly shows that but for a short stretch the interstate was unlighted. The suggestion of one witness for plaintiffs that automobile headlights could serve as landing lights only underlines the danger of landing on a highway of unknown traffic conditions. Plaintiffs' experts' further suggestion that the median strip of I–26 could have been a safer crash landing site is unsupported by any evidence as to the conditions of that median strip. The Court judicially notes that many mountain area median strips are wooded and hilly and not the flat concrete medians of urban interstates.

5. Cf. Sullivan v. United States, 299 F.Supp. 621 (N.D.Ala.1968).

6. The exact location of 13 Papa at the time of that critical communication is a matter of much dispute among the expert witnesses, all of whom testify credibly and expertly. The reconstructed route of 13 Papa by each of the experts is by their own testimony simply the reconstruction of one of an infinite number of possible routes consistent ·with the beginning known point, the known crash terminal point, the amount of time consumed, and the possible speeds of the aircraft. All the experts based their findings in part on the ITAP radar "pictures" of the plane's location. Various counsel in questioning opposing experts attack these ITAP reports on the basis of obvious variation and lack of pinpoint accuracy. Since all experts use that same data, these attacks do little to shake the credibility of any expert witness. The whole dispute is immaterial since from any of the possible locations the above conclusion as to the lack of sufficient time to reach the airport still holds true.

The Court concludes that an argument seeking to establish proximate cause for a fatal crash on no stronger foundation than arguing that the crash which would have occurred anyway might have been a less serious crash had a different set of directions been given, is simply too speculative to support a finding of proximate cause of the resulting deaths and plaintiffs' claim must fail. The Court is aware that plaintiffs need not prove with absolute certainty that the injury (in this case death) would not have resulted but for the negligence of the defendant, but the Court holds that plaintiffs must prove something more than a nebulous, undefined greater chance of survival in order to recover under the law of North Carolina.

The Court is aware of cases from many jurisdictions that if a plaintiff *"[M]ight* have been saved by a precaution which the defendant negligently omitted, the omission is deemed to have caused the harm, even though it is not possible to demonstrate conclusively that the precaution would have in fact saved the victim." *Hicks v. United States*, 368 F.2d 626, 632 n. 3 (4th Cir.1966), (emphasis in original). Nonetheless, plaintiff "[M]ust establish negligence *and proximate cause* as a reasonable inference from the facts proved and not circumstances which raise a mere conjecture or surmise." (citations omitted, emphasis supplied.) *Jackson v. Neill McKay Gin Co.*, 255 N.C. 194, 196, 120 S.E.2d 540, 542 (1961). In this case, plaintiffs have offered no more than a mere conjecture or surmise that the ATC's negligence was the proximate cause of any aggravation of the already inevitable crash. This is simply not a sufficient foundation for a recovery under North Carolina law.

### III.

While not necessary to a disposition of this case, in order to provide a full record for any review which plaintiffs may seek, the Court will now address defendant's allegations of contributory negligence on the part of Haley and proximate cause.

The evidence presented through defendant's expert, supports a finding, which the Court now makes, that the real cause of the engine failure which was in turn the real cause of the fatal crash was carburetor icing. Plaintiff has offered evidence through expert witnesses that water ingestion could cause the failure of an internal combustion engine of the type in 13 Papa. However, while these witnesses are both expert and credible, neither presented evidence upon which the Court could find that water ingestion could cause the type of manifold pressure loss which preceded the total power loss occurring in this case. Defendant's witnesses, specifically the witness Coogan, presented highly expert and credible testimony that water ingestion was a cause only insofar as it contributed to carburetor icing. The Court finds that this carburetor icing can and did result in the loss of manifold pressure, then the total loss of power, then the fatal crash. Since plaintiffs' evidence has in no fashion demonstrated that any act of the ATC's done differently would have sufficiently reduced the water ingestion to avoid carburetor icing, it is that carburetor icing which must be viewed as the critical factual element in the chain of circumstances establishing proximate cause. The Court further finds from the undisputed evidence that the carburetor heat control was in the closed position at crash and that the carburetor air mixer box was crumpled in the cold air position, both of which are consistent with the failure to use the carburetor heat system which would have cleared the icing problem. The Court finds from the evidence that a reasonably prudent pilot would have used this carburetor deicing system and that Haley failed to do so which failure was negligence and the proximate cause of the accident.[7]

---

**7.** While this finding might be a basis for liability of Haley toward the Hennings since, as the Court has previously held, inflight negligence of the captain is not imputable to passengers, no claim has been made by the Hennings against Haley and the Court is rendering no decision thereon.

On the question of proximate cause, plaintiffs point to the deposition of Coogan for the proposition that even had Haley managed the problem in a proper way, he was victimized by a worn carburetor heat exchanger, a defect the pilot would not be aware of.[8] The Court finds that this minimal evidence is not sufficient to unbalance the scales of evidence against the defendant on the question of proximate cause.[9]

For the reasons above stated, the Court will enter a judgment contemporaneously herewith that plaintiffs take nothing by reason of this action.

## APPENDIX A
### GLOSSARY OF AERONAUTIC JARGON

VOR — VHF navigational aid (omnidirectional course information).* (visual omni range)**

IFR — Instrument Flight Rules*

VFR — Visual Flight Rules*

ITAP — Interim Track Analysis Program***

---

*Air Traffic Control Handbook 7110.65C (Plaintiffs' Exhibit #5)
**Testimony of Buddy Cutshall
***Testimony of Frank McDermott

## APPENDIX B
### TRANSCRIPT OF ATC COMMUNICATIONS WITH 13 PAPA

PARTIAL LEGEND:

| | |
|---|---|
| AR/DR | Asheville Arr/Dep Radar, Female |
| AR/DR(2) | Asheville Arr/Dep Radar, Male |
| FD | Asheville Flight Data Position |
| LC | Asheville Tower, Local Control |
| 13P | Comanche 6313P |
| BG | Background comment |

| TIME & IDENT. | TRANSMISSION |
|---|---|
| 2333:06 13P | UH ASHEVILLE APPROACH COMANCHE SIX THREE ONE THREE PAPA'S WITH YA CLIMBING |
| 2333:11 AR/DR | COMANCHE SIX THREE ONE THREE PAPA ASHEVILLE DEPARTURE RADAR CONTACT AMEND YOUR ALTITUDE CLIMB AND MAINTAIN SIX THOUSAND FOR TRAFFIC WHEN LEAVING THREE THOUSAND SEVEN HUNDRED TURN RIGHT HEADING ONE ZERO ZERO UNTIL RECEIVING CHARLOTTE THEN DIRECT |

8. Defense objects to this use of the Coogan deposition asserting that it was never admitted for this purpose. The Court overrules this objection but holds that the question is immaterial in any event since the evidence is not relevant to the questions of defendant's negligence and proximate cause herein decided adversely to the plaintiff.

9. While further development of this evidence might make out a claim by Haley and Hennings against the owners of 13 Papa, no such claim is before the Court and plaintiffs' own evidence on the mechanical questions presented through the witness Ogburn, principal owner of the plane, is contradictory of such a theory.

| TIME & IDENT. | TRANSMISSION |
|---|---|
| 2333:25 13P | KAY OUT OF THREE POINT SEVEN HEADING ONE ZERO ZERO AND UH UP TO SIX THOUSAND ONE THREE PAPA |
| 2336:48 AR/DR | COMANCHE ONE THREE PAPA WHAT WILL YOUR AIRSPEED BE WHEN YOU LEVEL OFF? |
| 2336:52 13P | UH ONE THREE PAPA BE INDICATIN' 'BOUT A HUNDRED AND TWENTY FIVE KNOTS |
| 2336:57 AR/DR | ROGER |
| 2337:44 AR/DR | COMANCHE ONE THREE PAPA TURN RIGHT HEADING ONE FOUR ZERO THIS IS VECTOR FOR TRAFFIC YOU'RE UH, FOLLOWING A CERTURION OFF TO YOUR LEFT THAT'S GOING TO CHARLOTTE AT SEVEN THOUSAND ALSO |
| 2337:54 13P | (GARBLE) |
| 2338:31 AR/DR | COMANCHE ONE THREE PAPA CLIMB AND MAINTAIN SEVEN THOUSAND REPORT LEVEL |
| 2338:40 13P | UH ONE THREE PAPA UP TO SEVEN |
| 2339:43 AR/DR | COMANCHE SIX THREE ONE THREE PAPA COULD YOU ACCEPT A ROUTING OF DIRECT SPARTANBURG DIRECT SANDHILL? |
| 2339:51 13P | UH DIRECT SPARTANBURG DIRECT SANDHILL YES SIR ER YES MA'AM THAT'D BE OH KAY |
| 2339:56 AR/DR | COMANCHE SIX THREE ONE THREE PAPA PROCEED PRESENT POSITION DIRECT SPARTANBURG DIRECT SANDHILL REST OF CLEARANCE REMAINS THE SAME |
| 2340:03 13P | UH DIRECT SPARTANBURG DIRECT SANDHILL ONE THREE PAPA |
| 2341:35 13P | UH ONE THREE PAPA WAS OUR CLEARANCE TO GO TO SEVEN THOUSAND? |
| 2341:39 AR/DR | COMANCHE ONE THREE PAPA AFFIRMATIVE CLIMB AND MAINTAIN SEVEN THOUSAND AND REPORT LEVEL |
| 2341:43 13P | UH REPORT LEVEL |
| 2344:09 13P | ONE THREE PAPA LEVEL SEVEN THOUSAND |
| 2344:11 AR/DR | COMANCHE ONE THREE PAPA ROGER |
| 2344:16 13P | AND UH, WILL THIS ROUTING TAKE ME UH, OUT OF THIS MESS A LITTLE BIT BETTER THAN HEADING UH, A LITTLE BIT MORE NORTH AND EAST? |
| 2344:27 AR/DR | COMANCHE ONE THREE PAPA SAY AGAIN I COULDN'T UNDERSTAND THAT TRANSMISSION |
| 2344:30 13P | I HOPE THIS UH ROUTING THROUGH SPARTANBURG WILL TAKE ME OUT OF THIS UH RAIN A LITTLE BIT SOONER |
| 2344:42 AR/DR | WE'RE CHECKING ON THAT SIR |
| 2344:44 13P | OH KAY THANK YOU |
| 2344:48 AR/DR | COMANCHE ONE THREE PAPA IT LOOKS LIKE THERE'S RAIN EVERYWHERE, YOU'LL PROBABLY BE GOING THROUGH IT DIRECT SPARTANBURG ALSO |
| 2344:53 13P | OH KAY |
| 2346:47 13P | AND UH, ASHEVILLE APPROACH BE ADVISED ONE THREE PAPA WE CAN'T UH, MAINTAIN ALTITUDE, GOT A POWER LOSS |

| TIME & IDENT. | TRANSMISSION |
|---|---|
| 2346:56 AR/DR | COMANCHE ONE THREE PAPA SAY AGAIN I HEARD YOU WERE MAINTAINING SOMETHING, DIDN'T UNDERSTAND IT |
| 2347:01 13P | YES MAM, WE'RE UNABLE TO MAINTAIN ALTITUDE UH, I GOT A POWER LOSS |
| 2347:07 13P | AND WE'RE WORKING ON IT RIGHT NOW |
| 2347:10 AR/DR | COMANCHE ONE THREE PAPA ROGER THERE'S NO OTHER TRAFFIC IN YOUR AREA |
| 2347:14 13P | ONE THREE PAPA ROG |
| 2347:19 AR/DR | COMANCHE ONE THREE PAPA IS THAT DUE TO TURBULENCE OR ICING OR WHAT? |
| 2347:24 13P | UH ONE THREE PAPA, I BELIEVE IT'S JUST WATER, SUCKING IN WATER, BUT WE'RE DOWN TO ABOUT FOURTEEN INCHES AND WE JUST BROKE OUT, I GOT THE LIGHTS |
| 2347:34 AR/DR | COMANCHE ONE THREE PAPA ROGER |
| 2347:37 13P | UH CAN YOU VECTOR ME TOWARDS AN AIRPORT CLOSE BY? |
| 2347:43 AR/DR(2) | COMANCHE ONE THREE PAPA ASHEVILLE APPROACH YOU'RE SEVEN SOUTHEAST OF THE ASHEVILLE AIRPORT UH, AND YOU TURN RIGHT HEADING THREE UH, ZERO ZERO VECTOR BACK TOWARD THE ASHEVILLE AIRPORT, AND UH, KEEP US ADVISED ON YOUR ALTITUDE |
| 2347:56* 13P | UH ONE THREE PAPA WE'RE AT SIX POINT SIX NOW, WE'RE GETTING A LITTLE BIT OF POWER BACK, I THINK IT WAS JUST THE HEAVY RAIN SUCKING IT IN |
| 2348:04 AR/DR(2) | ALRIGHT SIR AND YOUR UH, TRANSMISSION IS VERY HARD TO UNDERSTAND ONE THREE PAPA, UNDERSTAND YOU WERE SUCKING IN WATER AND UH, HAVING TROUBLE MAINTAINING POWER UH, FOR LANDING ASHEVILLE YOU CAN BEGIN YOUR DESCENT TO FOUR THOUSAND SIX HUNDRED AND I TELL YOU WHAT FLY HEADING TWO SEVEN ZERO AND WE'LL TURN YOU IN ON THE FINAL, AND THE LOCALIZER THREE FOUR IS OUT OF SERVICE SO WE'LL TRY A SURVEILLANCE APPROACH FOR RUNWAY THREE FOUR WITH YA |
| 2348:28 13P | UH ONE THREE PAPA, I'D LIKE TO STAY OUT HERE I GOT CONTACT WITH THE GROUND AT THIS TIME UH, AND UH, I'D LIKE TO STAY OUT HERE IF ABLE |
| 2348:35 AR/DR(2) | ALRIGHT THAT'S APPROVED AND UH, YOU WANT TO STAY OUT THERE IS THAT WHAT YOU'RE SAYING? |
| 2348:41 13P | UH YES SIR, WE'RE STAR, WE GOT ABOUT SIX POINT FIVE NOW AND UH, WE'RE GETTING ABOUT FIFTEEN, SIXTEEN INCHES MAINFOLD PRESSURE, WE'RE TRYING TO MAINTAIN THAT |
| 2348:50 AR/DR(2) | ALRIGHT, YOU WANNA TRY TO PROCEED ON UH, TOWARDS SPARTANBURG OR COME BACK TO ASHEVILLE OR WHAT YOU WANT TO DO NOW? |
| 2348:56 13P | UH WELL, WHICH UH, ARE WE CLOSER TO SPARTANBURG? |
| 2349:00 AR/DR(2) | NO YOU'RE CLOSER TO THE ASHEVILLE AIRPORT UH, YOU'RE ONLY SEVEN MILES SOUTHEAST OF THE ASHEVILLE AIRPORT FROM SPARTANBURG YOU'RE ABOUT UH, THIRTY MILES |

| TIME & IDENT. | TRANSMISSION |
|---|---|
| 2349:08 13P | OH KAY SO WE'LL, WE'LL HAVE TO TAKE IT BACK, WE'RE UH, FOUR THOUSAND FIVE HUNDRED AND LOSING ALTITUDE STILL, SO UH, FOR VECTORS FOR A A S R WOULD BE NICE |
| 2349:16 AR/DR(2) | ALRIGHT SIR, THE HENDERSONVILLE AIRPORT, IF YOU HAVE GROUND IN CONTACT IS RIGHT OFF YOUR LEFT AT NINE O'CLOCK AND ONE AND ONE HALF MILES I DO NOT KNOW WHETHER THE RUNWAY LIGHTS WILL BE ON OR NOT AND THE RUNWAY THREE FOUR LOCALIZER IS ON NOW AND YOU'RE SIX AND A HALF MILES SOUTHEAST OF THE ASHEVILLE AIRPORT |
| 2349:35 13P | OH KAY WE'RE, WE'RE AT FOUR THOUSAND FEET AND WE GOT A COMPLETE POWER LOSS, AND UH, SO WE'LL GO FOR HENDERSON, CAN YOU GIVE ME VECTORS RIGHT OVER IT, WE'RE STILL, WE'RE BACK IN THE CLOUDS BUT WE SHOULD BREAK OUT |
| 2349:46* AR/DR(2) | OH KAY, UH, THE, [THE HENDERSONVILLE AIRPORT IS BEHIND YOU KNOW SO IT'D BE UH, UH HEADING OF ABOUT ONE UH, FIVE ZERO OR ONE FOUR ZERO, TOWARD THE HENDERSONVILLE AIRPORT YOU'RE TWO AND A HALF MILE NORTHWEST OF THE HENDERSONVILLE AIRPORT RIGHT NOW] |
| 2349:47** LC | I GOT ALL THE LIGHTS WIDE OPEN |
| 2349:49** FD | ARE YOU LISTENING TO THE EAST SIDE? |
| 2349:50** LC | YEAH, YEAH |
| 2349:51** FD | OH KAY, UH, MONITOR US, HE'S GOING TO HENDERSONVILLE, UH, YOU MIGHT IF YOU, YOU GOT A CHANCE CALL |
| 2349:55** LC | HE'D BE BETTER OFF COMING STRAIGHT IN RIGHT NOW |
| 2349:58* LC | HE'S LOSING POWER, HE'S GOT A, HE'S COMING DOWN |
| 2350:00* LC | THAT'S NOT WHAT I'M TALKING ABOUT THOUGH |
| 2350:00 13P | OH ON THE ONE FIVE ZERO FOR ONE THREE PAPA |
| 2350:02** FD | SAY AGAIN |
| 2350:02** LC | THAT'S WHAT I'M TALKING ABOUT, STRAIGHT IN TO HERE |
| 2350:04** FD | YEAH, WELL |
| 2350:06 LC | 'CAUSE HE'D BE OVER THE INTERSTATE |
| 2350:07** FD | LET'S SEE WHAT HE'S GONNA DO |
| 2350:09 13P | UH ONE THREE PAPA WE'RE UH, THREE THOUSAND FIVE HUNDRED DESCENDING AND WE'RE BREAKING OUT |
| 2350:14*** AR/DR(2) | OH KAY YOU MAY BE RIGHT OVER THE HENDERSON, OR THE INTERSTATE UH, HENDERSON, STATE RUNS JUST EAST OF THE FINAL APPROACH COURSE YOU MAY BE OVER THE INTERSTATE HIGHWAY IF YOU CAN SEE THAT UH, UNDERNEATH YOU THERE |
| 2350:27 | IT MAY BE TO YOUR LEFT UH, ONE THREE PAPA THE INTER- |

| TIME & IDENT. | TRANSMISSION |
|---|---|
| AR/DR(2) | STATE HIGHWAY WOULD PROBABLY BE TO YOUR LEFT UH, DO YOU SEE IT? |
| 2350:33 13P | UH NEGATIVE WE'RE RIGHT OVER TOWERS HERE AND WE'RE GOING DOWN |
| 2350:40 AR/DR(2) | KAY ONE THREE PAPA AN' YOU'RE FOUR AND A HALF MILES SOUTHEAST OF THE ASHEVILLE AIRPORT NOW AND UH, YOU'RE TURNING TO A ONE FIVE ZERO HEADING? |
| 2350:43** FD | SUH COMANCHE SINGLE ENGINE |
| 2350:45** LC | ALRIGHT |
| 2350:46** FD | JUST, JUST IN CASE COULD YOU CALL, UH, HENDERSON-VILLE, UH, MAKE SURE THEIR RUNWAY LIGHTS ARE ON |
| 2350:47* 13P | UH WE'RE HOLDING ONE FIVE ZERO, 'FRAID WE'RE GOING TO HAVE TO TAKE IT IN STRAIGHT AHEAD, WE'RE IN THE RAIN, CAN YOU GIVE ME AN ELEVATION OUT HERE? |
| 2350:52** LC | YEAH |
| 2350:52** FD | OH KAY |
| 2351:25 AR/DR(2) | COMANCHE ONE THREE PAPA YOU STILL WITH ME? |
| 2351:51** FD | HE DOESN'T TALK ANY MORE |
| 2351:52** LC | OH KAY, PUT A X THERE WHERE YOU LAST SAY HIM |
| 2354:06 AR/DR(2) | COMANCHE SIX THREE ONE THREE PAPA ASHEVILLE |
| 2354:46 BG | REPEAT THE UH, AIRCRAFT NUMBER (GARBLE) GET OVER THERE (GARBLE) |
| 2355:02 BG | UH (GARBLE) SIX MILES SOUTH OF THE AIRPORT IS THAT CORRECT? |

*These communications appeared in Plaintiffs' Exhibit 12C but not in Plaintiffs' Exhibit 12D.

**These communications appeared in Plaintiffs' Exhibit 12D but not in 12C. The reason for this difference is probably because 12D picks up tapes from other ATC positions not covered in 12C.

***There is a two-second difference between the two transcripts as to this item.