JOHN R. McDONNELL, Plaintiff v. TRADEWIND AIRLINES, INC., Defendant

No. COA07-634

(Filed 6 January 2009)

**1. Employer and Employee— at-will employee—refusal to fly non-revenue flight—firing not in contravention of North Carolina public policy**

The trial court did not err in a wrongful termination in violation of public policy case by concluding defendant's termination of plaintiff at-will employee based on his refusal to fly a nonrevenue flight (or ferry flight) from Vermont to North Carolina on 27 February 2000 was not in contravention of North Carolina public policy because: (1) contrary to plaintiff's assertion, 14 C.F.R. § 91.13 and N.C.G.S. § 63-13 do not constitute public policy exceptions, and N.C.G.S. § 63-13 was not applicable to the facts in this case; (2) the plain meaning of N.C.G.S. § 63-20 and the holding in *Mann*, 261 N.C. 338 (1964), address licensing to operate aircraft and do not speak to declarations of public policy or a public policy exception to the law governing at-will employment; and (3) the Court of Appeals rejected plaintiff's attempt to have his vagueness challenge, based on a motor vehicle statute, applied to the facts of this case.

**2. Employer and Employee— wrongful termination—federal aviation regulations—inapplicability to ferry flights**

Defendant airline's discharge of plaintiff flight engineer after he refused to fly a nonrevenue (ferry) flight from Vermont to North Carolina did not violate federal regulations requiring an airman who had flown more than eight hours during any consecutive 24 hour period to be given at least 16 hours of rest before being assigned to any duty with the airline, even though plaintiff had flown more than eight hours in the prior 24 hours and had not had 16 hours of rest, because those regulations did not apply to nonrevenue (ferry) flights.

**3. Evidence— exclusion of exhibits—company documents**

The trial court did not abuse its discretion in a wrongful termination case by excluding from evidence exhibits which were excerpts from defendant's company documents containing definitions of terminology within 14 C.F.R. 121.521 and 121.503 because: (1) the trial court concluded the statutes were to be inter-

McDONNELL v. TRADEWIND AIRLINES, INC.

[194 N.C. App. 674 (2009)]

preted as written and not as the company's materials defined the terms in issue; and (2) a different result would not have occurred had the policies been admitted.

**4. Costs— award of deposition costs—failure to show abuse of discretion**

The trial court did not err in a wrongful termination case by awarding defendant deposition costs of $1,596.93 because: (1) plaintiff failed to show the trial court abused its discretion; and (2) although the General Assembly addressed inconsistencies within our case law by providing effective 1 August 2007 that N.C.G.S. § 7A-305 was a complete and exclusive limit on the trial court's discretion to tax costs under N.C.G.S. § 6-20, this case was not governed by the newly enacted legislation.

Appeal by plaintiff from directed verdict entered 20 October 2006 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 11 December 2007.

*Smith, James, Rowlette, & Cohen, L.L.P., by Seth R. Cohen and J. David James, for plaintiff-appellant.*

*Tuggle, Duggins, & Meschan, P.A., by J. Reed Johnston, Jr. and Ryan S. Luft, for defendant-appellee.*

BRYANT, Judge.

Tradewind Airlines, Inc. (defendant) terminated John R. McDonnell (plaintiff) from his position as a flight engineer after he refused an assignment to ferry a plane from Burlington, Vermont to Greensboro, North Carolina. Plaintiff alleges that his flight schedule preceding the termination of employment violated several Federal Aviation Regulations (FARS), and, as a result, he was too fatigued to execute his duties safely. For the reasons stated herein, we affirm the judgment of the trial court.

*FACTS/PROCEDURAL HISTORY*

Plaintiff began working as a flight engineer for Defendant Tradewind Airlines in December 1997. On 26 February 2000, plaintiff reported for duty at 6:45 a.m. and remained on duty until 10:15 a.m. the next morning. While plaintiff was resting in his motel room in Burlington, Vermont defendant requested that plaintiff fly the plane without passengers (a.k.a. "ferry flight") back to Greensboro, North Carolina at midnight the evening of 27 February 2000. Plaintiff indi-

McDONNELL v. TRADEWIND AIRLINES, INC.

[194 N.C. App. 674 (2009)]

cated he was too tired, refused to make the flight, and was terminated from employment with defendant.

Plaintiff filed a wrongful termination suit against defendant in Guilford County Superior Court. Defendant removed the action to federal court, alleging federal question jurisdiction based on preemption of the claim by the Federal Aviation Act (FAA). Defendant moved to dismiss the case. Plaintiff filed a motion to remand alleging the federal court lacked subject matter jurisdiction. On 9 March 2004, the case was remanded to Guilford County Superior Court from the U.S. District Court, Middle District of North Carolina by Judge N. Carlton Tilley, Jr. who determined that

> because the federal courts are of limited jurisdiction and because all doubts should be resolved in favor of remand, this Court finds that the FAA does not completely preempt state law. As such, this Court has no subject matter jurisdiction and the case is remanded to state court for further proceedings.

On 15 July 2004, Superior Court Judge Lindsay R. Davis, Jr. found that plaintiff's claim was not preempted by the FAA and denied defendant's Rule 12(b)(6) motion to dismiss. Defendant filed an answer on 29 July 2004, and filed a motion for summary judgment on 16 June 2006. Plaintiff filed a motion to amend his complaint on 18 August 2006.

On 7 September 2006, defendant's summary judgment motion was denied, and this case came on for trial on 25 September 2006 before Superior Court Judge Stuart Albright in Guilford County. At the close of plaintiff's evidence, defendant moved for a directed verdict which was granted on 20 October 2006. From the trial court's order granting defendant's motion, plaintiff appeals.

---

Both parties raise several issues on appeal. The issues presented by plaintiff are whether the trial court erred in: (I) granting defendant's motion for a directed verdict and concluding, as a matter of law, that 14 C.F.R. § 91.13 and N.C. Gen. Stat. § 63-13 are too vague and ambiguous to constitute a public policy exception to North Carolina's at-will employment doctrine; (II) granting defendant's motion for a directed verdict, and concluding, as a matter of fact, that no reasonable jury could conclude that defendant violated 14 C.F.R. § 121.521 and 14 C.F.R. § 121.503; (III) excluding from evidence several of plaintiff's exhibits; and, (IV) awarding defendant deposition costs.

On cross-appeal, the issues presented by defendant are whether the trial court erred in: (V) failing to conclude that the public policy exception to the at-will employment doctrine is limited to express statements within North Carolina's statutes or constitution; and (VI) denying defendant's motion to dismiss, and finding that plaintiff's wrongful discharge claim was not preempted by federal law.

### Standard of Review

On review, a motion for a directed verdict presents the question of whether the evidence taken in a light most favorable to the plaintiff was sufficient for submission to the jury. *Helvy v. Sweat*, 58 N.C. App. 197, 199, 292 S.E.2d 733, 734 (1982) (citation omitted). The motion should be denied "if there is more than a scintilla of evidence to support all the elements of plaintiff's *prima facie* case." *Southern R. Co. v. O'Boyle Tank Lines, Inc.*, 70 N.C. App. 1, 4, 318 S.E.2d 872, 875 (1984). The standard of review for the granting of defendant's directed verdict motion is whether "when viewing the evidence in the light most favorable to plaintiff no reasonable juror could find for plaintiff." *Allen v. Weyerhaeuser, Inc.*, 95 N.C. App. 205, 207, 381 S.E.2d 824, 826 (1989) (citing *West v. Slick*, 313 N.C. 33, 40, 326 S.E.2d 601, 606 (1985)).

### I

[1] The critical question this Court is being asked to address is whether defendant's termination of plaintiff based on his refusal to fly a non-revenue flight (or ferry flight) back to Greensboro on 27 February 2000 was in contravention of North Carolina public policy. We conclude it was not.

In North Carolina, employment is generally terminable by either the employer or employee for any reason where no contract exists specifying a definite period of employment. *Rucker v. First Union Nat'l Bank*, 98 N.C. App. 100, 102, 389 S.E.2d 622, 624 (1990) (citation omitted). This is a bright-line rule with very limited exceptions. An at-will employee may not be terminated: "(1) for refusing to violate the law at the employers [sic] request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy." *Ridenhour v. IBM*, 132 N.C. App. 563, 568-69, 512 S.E.2d 774, 778 (1999) (internal citations omitted).

Here, it is undisputed that plaintiff was an at-will employee, and the first issue on appeal is whether defendant's actions violated the public policy of North Carolina. To prevail on a claim for unlawful ter-

mination in violation of public policy "a plaintiff must identify a specified North Carolina public policy that was violated by an employer in discharging the employee." *Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 694, 575 S.E.2d 46, 52 (2003) (citation omitted).

In *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989), our Supreme Court first recognized a public policy exception to the employment-at-will doctrine:

> [W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.

*Id.* at 175, 381 S.E.2d at 447 (quoting *Sides v. Duke Hospital*, 74 N.C. App. 331, 342, 328 S.E.2d 818, 826 (1985)). In *Coman*, the plaintiff brought suit for wrongful discharge, alleging he was terminated from his employment as a long-distance truck driver after refusing to falsify driving records, a violation of federal transportation regulations. *Id.* at 173-74, 381 S.E.2d at 446. The Court held the actions of the defendant violated the public policy of North Carolina as set out in certain general statutes that promulgate highway safety and regulation. *Id.* at 175, 381 S.E.2d at 447. "[P]ublic policy has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Id.* at 175 n.2, 381 S.E.2d at 447 n.2 (citing *Petermann v. Int'l Bhd. of Teamsters*, 174 Cal. App. 2d 184, 344 P. 2d 25 (Cal. App. 2d Dist, 1959)).

While *Coman* establishes the availability of a tort action for wrongful discharge in violation of public policy, the Court did not otherwise define what constituted "public policy" for purposes of such a claim. *Id.* at 177, 381 S.E.2d at 448. The public policy exception, under which plaintiff in the instant case brings this suit, is not encapsulated by an enumerated list. *Garner v. Rentenbach Constructors, Inc.*, 129 N.C. App. 624, 628, 501 S.E.2d 83, 86 (1998). Rather, this exception is applicable where (1) the public policy of North Carolina is clearly expressed within our general statutes or state constitution, or (2) potential harm to the public is created by defendant's unlawful actions. *See Considine v. Compass Group USA, Inc.*, 145 N.C. App. 314, 321, 551 S.E.2d 179, 184 (2001); *see also Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992) ("Although

the definition of 'public policy' approved by this Court does not include a laundry list of what is or is not 'injurious to the public or against the public good,' at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes.").

Plaintiff argues that the trial court erred in finding that 14 C.F.R. § 91.13 and N.C.G.S. § 63-13 are too ambiguous and vague as a matter of law to constitute North Carolina public policy. We disagree.

Under 14 C.F.R. § 91.13, "Careless or reckless operation":

(a) Aircraft operations for the purpose of air navigation. No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another, (b) Aircraft operations other than for the purpose of air navigation. No person may operate an aircraft, other than for the purpose of air navigation, on any part of the surface of an airport used by aircraft for air commerce (including areas used by those aircraft for receiving or discharging persons or cargo), in a careless or reckless manner so as to endanger the life or property of another.

14 C.F.R. § 91.13 (2007). Under the North Carolina General Statutes, Section 63-13, "Lawfulness of flight":

Flight in aircraft over the lands and waters of this State is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be injurious to the health and happiness, or imminently dangerous to persons or property lawfully on the land or water beneath. The landing of an aircraft on the lands or waters of another, without his consent, is unlawful, except in the case of a forced landing. For damages caused by a forced landing, however, the owner or lessee of the aircraft or the aeronaut shall be liable as provided in G.S. 63-14.

N.C.G.S. § 63-13 (2007). Plaintiff asserts that 14 C.F.R. § 91.13 and N.C.G.S. § 63-13 constitute a public policy exception.

We acknowledge the basic premise that we are bound to enforce federal safety regulations where they may be applicable. *See Charlotte v. Spratt*, 263 N.C. 656, 665, 140 S.E.2d 341, 347 (1965) ("[o]ur statutes . . . contemplate full cooperation and compliance with federal statutes and rules and regulations of appropriate federal agen-

cies"); *Mann v. Henderson*, 261 N.C. 338, 341, 134 S.E.2d 626, 628 (1964) (applicable FAS regulations are binding on state courts). However, unlike in *Coman* where the defendant's conduct violated federal regulations and North Carolina public policy, in the instant case 14 C.F.R. § 91.13, in and of itself, is not sufficient to constitute an express statement of our public policy. *See Coman*, 325 N.C. at 178, 381 S.E.2d at 449 ("[W]e do not bottom our opinion upon federal public policy. . . .").

Plaintiff also contends that N.C. Gen. Stat. § 63-13 sufficiently delineates a public policy of aviation safety in this state. However, to the extent the statute mentions air safety, the General Assembly has limited its application to airspace within our state's sovereignty. *See* N.C. Gen. Stat. § 63-11 (2007) (North Carolina retains sovereignty over air space above this State "except where granted to and assumed by the United States."). As a result, N.C.G.S. § 63-13 is not applicable to the facts in the instant case. See 49 U.S.C. § 40103 (b) (1) (2007) ("Administrator of the [FAA] shall develop plans and policy for the use of the navigable airspace[.]"); 49 U.S.C. § 40102(a)(32) (2007) (" 'navigable airspace' means airspace above the minimum altitudes of flight prescribed by regulations . . . including airspace needed to ensure safety in the takeoff and landing of aircraft").

Within the North Carolina General Statutes, we have found no express policy declarations indicating that the public policy of North Carolina was contravened when defendant terminated plaintiff from his at-will employment. Plaintiff, however, points to N.C. Gen. Stat. § 63-20 which requires any person operating aircraft in this state to have a federal license, and to case law stating "[f]ederal laws and regulations where applicable, are, of course, binding on state courts and subject to judicial notice by state courts." *Mann*, 261 N.C. at 341, 134 S.E.2d at 628-29 (1964). Plaintiff claims this is the express language that indicates his termination was in contravention of public policy because the Federal Aviation Regulations are binding on North Carolina. However, in that regard, we are not persuaded.

The plain meaning of N.C.G.S. § 63-20 and the holding in *Mann* address licensing to operate aircraft and do not speak to declarations of public policy or a public policy exception to the law governing at-will employment. *See* N.C.G.S. § 63-20 (2007); *Mann*, 261 N.C. at 341, 134 S.E.2d at 628-29 (1964). Plaintiff also urges this court to review our careless and reckless statute (N.C.G.S. § 20-140) with regard to the trial court's ruling that 14 C.F.R. § 91.13 is too vague and ambiguous to constitute North Carolina public policy.

However, we reject plaintiff's attempt to have his vagueness challenge, based on a motor vehicle statute, applied to the facts of this case. Plaintiff's claim for wrongful termination fails as a matter of law. The trial court did not err in granting defendant's motion for directed verdict. This assignment of error is overruled.

## II

**[2]** Plaintiff next argues the trial court erred by finding that no reasonable jury could conclude, as a matter of fact, that defendant violated 14 C.F.R. § 121.521 or 14 C.F.R. § 121.503. We disagree.

The trial court determined that 14 C.F.R. § 121 did not apply to the "ferry flight." *See* 14 C.F.R. § 91.501 (ferry flights are among those flights not covered by part 121). Nevertheless, we acknowledge that the evidence, viewed in the light most favorable to plaintiff, showed that when defendant ordered plaintiff to fly from Burlington, Vermont to Greensboro, North Carolina plaintiff had been on duty for all or part of thirteen consecutive days from 14 February 2000 through 27 February 2000. Plaintiff contends this was in violation of 14 C.F.R. § 121.521(b) which states that an airman must be relieved of all duties for at least 24 consecutive hours during any seven consecutive days. 14 C.F.R. § 121.521(b). Plaintiff's evidence further shows plaintiff had been aloft as a member of a flight crew for 20 or more hours during any 48 consecutive hours and therefore should have been given at least 18 hours of rest before being assigned to any duty with defendant.

> (a) No certificate holder conducting supplemental operations may schedule an airman to be aloft as a member of the flight crew in an airplane that has a crew of two pilots and at least one additional flight crew member for more than 12 hours during any 24 consecutive hours.
>
> (b) If an airman has been aloft as a member of a flight crew for 20 or more hours during any 48 consecutive hours or 24 or more hours during any 72 consecutive hours, he must be given at least 18 hours of rest before being assigned to any duty with the certificate holder. In any case, he must be relieved of all duty for at least 24 consecutive hours during any seven consecutive days.

14 C.F.R. § 121.521(a)-(b) (2007). "Each pilot who has flown more than eight hours during any 24 consecutive hours must be given at least 16 hours of rest before being assigned to any duty with the certificate holder." 14 C.F.R. § 121.503(b) (2007). "In any operation in

which one flight engineer is serving[,] the flight time limitations in §§ 121.503 and 121.505 apply to that flight engineer." 14 C.F.R. § 121.511(a) (2007).

Plaintiff's evidence also shows plaintiff had flown more than eight hours in the prior 24 hours and would not have had 16 hours of rest before the flight to Greensboro, as required by 14 C.F.R. § 121.503(b). Therefore, plaintiff urges this Court to adopt the plain meaning of each regulation in question which would apparently restrict defendant from assigning plaintiff to any duty during a required rest period. *See* 14 C.F.R. §§ 121.521, 121.503 (2007).

The FAA Office of Chief Counsel offers legal interpretations of Federal Aviation Regulations, and has consistently refused to apply an interpretation that ferry flights occurring after Part 121 flights count toward flight time limitations and rest requirements. While we note that currently there is debate to change the FAA's interpretation of the rest requirements under these types of circumstances, we will accept the FAA's reading of their regulations.

Therefore, despite the hours plaintiff logged prior to being required to fly the ferry flight, the federal regulations cited by plaintiff were not applicable to defendant's directive to plaintiff to make a ferry flight. Thus, the trial court did not err in finding that since plaintiff's claim was based on regulations that were not applicable to plaintiff's flight, such evidence could not support a verdict for plaintiff. Accordingly, plaintiff's assignments of error as to his claims under sections 121.521 and 121.503 are overruled.

### III

[3] Plaintiff next argues that the trial court erred in excluding from evidence exhibits 2 and 5 which are excerpts from defendant's company documents containing definitions of terminology within 14 C.F.R. 121.521 and 121.503. We disagree.

We review the trial court's admission of evidence for an abuse of discretion and overturn the decision only if it was so arbitrary that it could not have been the result of a reasoned decision. *Brown v. City of Winston-Salem*, 176 N.C. App. 497, 505, 626 S.E.2d 747, 753 (2006).

It is undisputed that: (1) each passenger flight preceding the Burlington flight operated under Part 121 of the Federal Aviation Regulations, and (2) the Burlington flight was a ferry flight operating under Part 91. First, Exhibit 2 (the Operations Manual) states that "For company operations actual block time will be used whenever

the term 'aloft' appears in the FARs." Second, Exhibit 5 (the Flight Deck Crew Policy Handbook) states that flight time is defined as "the time from the moment the aircraft first moves for the purpose of flight until it comes to rest at the point of landing (block to block)."

Plaintiff seems to argue that because the FAA was "required to go through [the company's policies] word for word, line by line and page for page" the FAA has ratified the definition of "aloft" that is favorable to plaintiff's position. However, plaintiff has failed to cite any law for this proposition. The trial court excluded the company's documents reasoning that the statutes were to be interpreted as written, not as the company's materials defined the terms in issue. Nevertheless, a different result would not have occurred had the policies been admitted. Therefore, we hold that the exclusion of plaintiff's evidence was not an abuse of discretion by the trial court. See *State v. Sloan*, 180 N.C. App. 527, 532-33, 638 S.E.2d 36, 40 (2006). Accordingly, this assignment of error is overruled.

## IV

[4] Last, plaintiff argues that the trial court erred in awarding defendant deposition costs. We disagree.

As a starting point for our analysis we note that some panels of this Court have chosen to use an abuse of discretion standard due to the language under N.C. Gen. Stat. § 6-20, which leaves costs in the discretion of the trial court. *See Cosentino v. Weeks*, 160 N.C. App. 511, 516, 586 S.E.2d 787, 789-90 (2003) (reviewing under an abuse of discretion standard).

In *Morgan v. Steiner*, 173 N.C. App. 577, 619 S.E.2d 516, *disc. review denied*, 360 N.C. 648, 636 S.E.2d 808 (2005), deposition costs were upheld and our Court applied the three-part test stated in *Lord v. Customized Consulting Specialty, Inc.*, 164 N.C. App. 730, 596 S.E.2d 891 (2004):

> First, if the costs are items provided as costs under N.C. Gen. Stat. § 7A-305, then the trial court is required to assess these items as costs. Second, for items not costs under N.C. Gen. Stat. § 7A-305, it must be determined if they are "common law costs" under the rationale of [Department of Transp. v.] Charlotte Area [Manufactured Hous., Inc., 160 N.C. App. 461, 586 S.E.2d 780 (2003)]. Third, as to "common law costs" we must determine if the trial court abused its discretion in awarding or denying these costs under N.C. Gen. Stat. § 6-20.

McDONNELL v. TRADEWIND AIRLINES, INC.

[194 N.C. App. 674 (2009)]

*Lord*, 164 N.C. App. at 734, 596 S.E.2d at 895 (quoted in *Morgan*, 173 N.C. App. at 581, 619 S.E.2d at 519). In applying these factors in *Morgan*, we noted that while deposition costs are not specifically enumerated in the applicable (pre-2007) version of section 7A-305, they were common law costs that could be awarded under section 6-20, and as such the question on appeal was whether the trial court abused its discretion in awarding them. *Morgan*, 173 N.C. App. at 581-82, 619 S.E.2d at 519-20.

Here, the trial court awarded defendant, the prevailing party, deposition costs of $1,596.93. While there is divergent case law with respect to whether deposition costs are recoverable, *see Handex of the Carolinas, Inc. v. County of Haywood*, 168 N.C. App. 1, 13, 607 S.E.2d 25, 32-33 (2005), plaintiff has not shown the trial court abused its discretion in awarding deposition costs.

Effective 1 August 2007, the General Assembly addressed the inconsistencies within our case law by providing that N.C. Gen. Stat. § 7A-305 is a "complete and exclusive . . . limit on the trial court's discretion to tax costs pursuant to G.S. 6-20." *See* 2007-212. no. 3 N.C. Advance Legis. Serv. 162-63. However, the present case is not governed by this newly enacted legislation, and thus, we have reviewed the costs pursuant to our current case law. Furthermore, since the *Handex* decision, this Court has decided *Miller v. Forsyth Mem'l Hosp., Inc.*, 173 N.C. App. 385, 391, 618 S.E.2d 838, 843 (2005) (unpublished) (the trial court did not abuse its discretion in awarding deposition costs). This assignment of error is overruled. Accordingly, the trial court's order granting defendant deposition costs is affirmed.

As we have overruled plaintiff's assignments of error argued on appeal and affirmed the trial court's judgment in favor of defendant, we decline to reach defendant's arguments on cross appeal. For the reasons stated herein the judgment of the trial court is affirmed.

AFFIRMED.

Judge ELMORE concurs.

Judge WYNN concurs in the result only.