HOWARD H. PIERCE, SR., PLAINTIFF V. THE ATLANTIC GROUP, INC, D/B/A/ DZ ATLANTIC, DAY & ZIMMERMANN LLC OF PENNSYLVANIA AND DAY & ZIMMERMAN LLC D/B/A/ DZ ATLANTIC GROUP AND/OR DZ ATLANTIC, AND DUKE ENERGY CAROLINAS, LLC, DEFENDANTS

No. COA11-494

(Filed 21 February 2012)

## 1. Employer and Employee—wrongful discharge—Retaliatory Employment Discrimination Act—initiation of inquiry

The trial court did not err by dismissing plaintiff's complaint under N.C.G.S. § 1A-1, Rule 12(b)(6) for violation of the Retaliatory Employment Discrimination Act. Plaintiff called defendant Duke's ethics hotline to report the retaliatory treatment he had been receiving and not to report a concern regarding occupational health and safety in the context of his employment with defendant Atlantic. These allegations were insufficient to constitute the initiation of an inquiry pursuant to N.C.G.S. § 95-241(a).

**PIERCE v. THE ATLANTIC GRP., INC.**

[219 N.C. App. 19 (2012)]

## 2. Employer and Employee—wrongful discharge—failure to show violation of law or public policy

The trial court did not err by dismissing plaintiff's wrongful discharge claim. Plaintiff's allegations failed to show that defendants ever violated their Occupational Safety and Health Adminstration obligations, including 13 N.C. Admin. Code 07F .0901, *et seq.*, and plaintiff's assertions that defendants' termination of his employment violated law or public policy based on provisions of the administrative code that were yet to become effective did not remedy this deficiency in plaintiff's pleadings.

## 3. Emotional Distress—negligent infliction of emotional distress—intentional infliction of emotional distress

The trial court did not err by dismissing plaintiff's claims of negligent and intentional infliction of emotional distress. Plaintiff's statement that he began to experience serious on and off the job stress that severely affected his relationship with his wife and family members was insufficient to support these claims.

## 4. Libel and Slander—libel per se—failure to allege email or report susceptible of two meanings—libel per quod

The trial court did not err by dismissing plaintiff's defamation claim. Plaintiff's complaint, alleging that defendant falsely contended that plaintiff falsified his time card or reported plaintiff to the Nuclear Regulatory Commission did not set forth a cause of action for libel *per se*. Further, plaintiff's complaint was insufficient to state a claim because the complaint did not allege that the email or report were susceptible of two meanings. Finally, plaintiff's allegation that the alleged defamation damaged plaintiff's economic circumstances did not fairly inform defendants of the scope of plaintiff's libel *per quod* claim.

Appeal by plaintiff from order entered 3 February 2011 by Judge Robert F. Floyd, Jr., in Robeson County Superior Court. Heard in the Court of Appeals 27 October 2011.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, and Behan Law, by Kathleen A. Behan, for the plaintiff.*

*Littler Mendelson, P.C., by Jerry H. Walters, Jr., and Julie K. Adams, for defendant, The Atlantic Group, Inc. d/b/a/ DZ Atlantic.*

**PIERCE v. THE ATLANTIC GRP., INC.**

[219 N.C. App. 19 (2012)]

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Robert M. Bisanar and Michael L. Wade, Jr., for defendant, Duke Energy Carolinas, LLC.*

THIGPEN, Judge.

The employment of Howard H. Pierce, Sr., ("Plaintiff") was terminated by The Atlantic Group, Inc., *et al.*, ("Defendant Atlantic"). Defendant Atlantic is an engineering, construction and maintenance contractor providing services to Duke Energy Carolinas, LLC, ("Defendant Duke Energy") (together, "Defendants"). Plaintiff filed a complaint alleging the following: In terminating Plaintiff's employment, Defendants violated the Retaliatory Employment Discrimination Act; Plaintiff was wrongfully discharged in violation of public policy and N.C. Gen. Stat. § 95-126, *et seq.*, which governs the occupational health and safety of North Carolina employees; Defendants' actions amounted to negligent and intentional infliction of emotional distress; and Defendants defamed Plaintiff. On appeal, we must determine whether the trial court erred by dismissing Plaintiff's complaint pursuant to Defendants' Rule 12(b)(6) motion. We affirm the order of the trial court.

### I: Factual and Procedural Background

The record tends to show the following: Plaintiff was hired by Defendant Atlantic in 2001, and held numerous positions with Defendant Atlantic, including supervisor, certified crane operator, and rigger. Over the course of eight years with Defendant Atlantic, Plaintiff was promoted from the position of rigger to lifting rigger supervising coordinator. Plaintiff's pay was, over time, increased to the rate of forty-four dollars per hour. Plaintiff reported to both Defendant Atlantic and Defendant Duke Energy.

In February 2009, Plaintiff received a memorandum from Defendant Duke Energy alerting employees that new regulations, 13 N.C. Admin. Code 07F .0901, *et seq.*, would affect crane operators and riggers, requiring them to be certified. The regulations were scheduled to take effect on 1 October 2009.[1] Plaintiff brought the memorandum to the attention of his supervisors and proposed a process by which the operators could be trained and certified in a way which would not interfere with the operations of the plant during its busiest times. Plaintiff did not receive a response to his proposal. Plaintiff,

---

1. We also note that 13 N.C. Admin. Code 07F .0901, *et seq.*, was repealed on 1 February 2011.

however, continued to raise the issue of certification on a weekly basis, but Plaintiff's proposal and concerns were not addressed.

In late March 2009, Defendant Atlantic asked Plaintiff to take a twenty-eight day vacation break from his position at the McGuire Duke Energy Nuclear Power Plant ("McGuire") where he was currently working. On 30 March 2009, Plaintiff began his vacation, expecting to return to his former position as supervisor at a pay rate of forty-four dollars per hour, as he was assured by a staffing employee with Defendant Atlantic, Ms. Angie Green ("Ms. Green"). Shortly after beginning his vacation, Plaintiff received a phone call from Ms. Green, who asked Plaintiff whether he would be willing to assist Defendant Atlantic in staffing a fueling outage at Oconnee Nuclear Power Plant ("Oconnee"). Plaintiff agreed to assist on the condition that Ms. Green contact his supervisors at both Defendant Atlantic and Defendant Duke Energy to ensure that he would not lose his supervisory level position and salary upon his return to McGuire. Ms. Green agreed. Ms. Green later contacted Plaintiff, explaining that his supervisors had approved, but for purposes of the Oconnee assignment, Plaintiff would only be paid twenty-seven dollars per hour. Plaintiff accepted the temporary pay reduction.

Several weeks into the Oconnee assignment, Ms. Green contacted Plaintiff, requesting that Plaintiff return to McGuire as an advanced rigger rather than a supervisor, at a pay rate of twenty-eight dollars per hour. Plaintiff was informed that this demotion would be temporary until the conclusion of the "fall outage" period, at which time Plaintiff would return to his prior position.

Plaintiff continued to be concerned about the certification of the operators as required by 13 N.C. Admin. Code 07F .0901, *et seq.*, and "feared that Defendants' explanations for his demotion in pay were a pretext in order to remove him from a supervisor position." Plaintiff was told that since he was no longer a supervisor, "the issue of the certification was not his to address."

On 24 August 2009, Plaintiff called Defendant Duke Energy's "ethics hotline" and reported the alleged "retaliatory treatment" he had received. Plaintiff believed the hotline was a confidential resource. However, Plaintiff was asked to provide his identity and the names of "persons who concerned him." Plaintiff named Mike Henline ("Henline") of Defendant Atlantic, Jimmy Shelton ("Shelton") of Defendant Duke Energy, Donny Lawing ("Lawing") of Defendant Duke Energy, Maurice Horn ("Horn") of Defendant Duke Energy, and

Joe Bates ("Bates") of Defendant Duke Energy. Plaintiff called the hotline on multiple other occasions after his first call.

During September of 2010, Plaintiff felt that "workplace conditions became increasingly adverse." Specifically, Plaintiff felt that his schedule was being arbitrarily changed and interrupted, such that he could not get sufficient hours to support his family.

On Friday, 19 September 2010, Plaintiff was advised that on Monday, 21 September 2010, Plaintiff would begin on the nightshift. As a result of the change, Plaintiff filled out his timecard on Friday morning—rather than Monday morning, as was his usual practice— estimating the hours he was required to work on Friday based on his instructions from Shelton. Shortly after filling out his timecard, Plaintiff learned that his wife had possibly had a heart attack, and she had been transported to the hospital. Plaintiff left the plant to go to the hospital and called Mr. Leroy Price ("Price") to explain his absence. Price advised Defendant to "see to his wife, and . . . the time card issues would be resolved the following week."

On the evening of 19 September 2009, a "Site Maintenance Lifting Coordinator" for Defendant Duke Energy sent an email to Defendant Atlantic stating, "I have document proof that [Plaintiff] has falsified his timesheet . . . [Henline] is in the process of pulling [Plaintiff's] badge." However, at Plaintiff's request, Henline later corrected Plaintiff's timecard and initialed his corrections. Henline assured Plaintiff that "he would suffer no adverse consequences from the mistakes in completing the card."

On Monday, 21 September 2009, Plaintiff called Henline and was told not to report for his shift but to come in the next day. Plaintiff was told "he would be written up but that the timecard would be corrected." On 23 September 2009, Plaintiff was again told not to come in but to report the next morning. When Plaintiff arrived on 24 September 2009, Henline and Bates terminated Plaintiff's employment, asked him to return his badge, and removed Plaintiff from the premises. Plaintiff reviewed the documents regarding his termination and discovered that the basis of his termination was "falsification of a time-card[.]"

Defendant Duke Energy reported Plaintiff to the Nuclear Regulatory Commission, barring Plaintiff from "unescorted access to facilities around the nation." Plaintiff alleges this "permanently damag[ed] his reputation and his ability to obtain suitable similar employment."

**PIERCE v. THE ATLANTIC GRP., INC.**

[219 N.C. App. 19 (2012)]

Plaintiff appealed his termination in human resources, but his appeal was unsuccessful. On 16 August 2010, Plaintiff filed a complaint against Defendants. Both Defendant Duke Energy and Defendant Atlantic filed motions for an extension of time to file their answers, and both Defendants received a thirty day extension. Defendant Duke Energy filed their answer on 12 October 2010 and alleged that Plaintiff's complaint failed to state a claim upon which relief may be granted. Defendant Atlantic also filed an N.C. Gen Stat § 1A-1, 12(b)(6) motion to dismiss Plaintiff's complaint on 20 October 2010.

On 17 November 2010, Plaintiff filed a motion to amend the complaint. In Plaintiff's amended complaint, also filed 17 November 2010, he realleges the following: Defendants violated the Retaliatory Employment Discrimination Act; Plaintiff was wrongfully discharged in violation of public policy and N.C. Gen. Stat. § 95-126, *et seq.*, which governs the occupational health and safety of North Carolina employees; Defendants' actions amounted to negligent and intentional infliction of emotional distress; and Defendants defamed Plaintiff. Defendant Duke Energy filed an additional N.C. Gen Stat § 1A-1, 12(b)(6) motion to dismiss on 28 November 2010.

On 3 February 2011, the trial court entered an order granting Defendants' N.C. Gen Stat § 1A-1, 12(b)(6) motion to dismiss Plaintiff's complaint. From this order, Plaintiff appeals.

## II:  Standard of Review

"On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the standard of review is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Stunzi v. Medlin Motors, Inc.,* ___ N.C. App. ___, ___, 714 S.E.2d 770, 773 (2011) (quotation omitted). "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Id.* (quotation omitted). Dismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Id.* at ___, 714 S.E.2d at 773-74.

### III: Motion to Dismiss

In Plaintiff's argument on appeal, he contends the trial court erred by dismissing his complaint against Defendants pursuant to Defendants' N.C. Gen Stat § 1A-1, 12(b)(6) motion. Specifically, Plaintiff argues that the allegations in each of the five counts in Plaintiff's complaint, treated as true, are sufficient in this case to state a claim upon which relief may be granted. We address each count in turn, and ultimately conclude the trial court did not err by dismissing Plaintiff's complaint.

### A: Retaliatory Employment Discrimination Act

**[1]** Plaintiff first contends the trial court erred by dismissing Plaintiff's allegation that Defendants violated the Retaliatory Employment Discrimination Act ("REDA"). We disagree.

N.C. Gen. Stat. § 95-241(a) (2011) provides that "[n]o person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to . . . [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to . . . Article 16 of this Chapter[,]" the Occupational Safety and Health Act of North Carolina ("OSHA"), N.C. Gen. Stat. § 95-126 (2011), *et. seq.*

"In order to state a claim under REDA, a plaintiff must show (1) that he exercised his rights as listed under N.C. Gen. Stat. § 95-241(a), (2) that he suffered an adverse employment action, and (3) that the alleged retaliatory action was taken because the employee exercised his rights under N.C. Gen. Stat. § 95-241(a)." *Wiley v. UPS, Inc.*, 164 N.C. App. 183, 186, 594 S.E.2d 809, 811 (2004) (citation omitted). An adverse action includes "the discharge, suspension, demotion, retaliatory relocation of an employee, or other adverse employment action taken against an employee in the terms, conditions, privileges, and benefits of employment." N.C. Gen. Stat. § 95-240(2) (2011). "If plaintiff presents a prima facie case of retaliatory discrimination, then the burden shifts to the defendant to show that he 'would have taken the same unfavorable action in the absence of the protected activity of the employee.' " *UPS, Inc.*, 164 N.C. App. at 186, 594 S.E.2d at 811. (quoting N.C. Gen. Stat. § 95-241(b)). "Although evidence of retaliation in a case such as this one may often be completely circumstantial, the causal nexus between protected activity and retaliatory discharge must be something more than speculation." *Id.* at 187, 594 S.E.2d at 811 (quotation omitted).

In this case, the parties do not dispute that Plaintiff "suffered an adverse employment action[.]" *Id.* at 186, 594 S.E.2d at 811. However, the parties dispute whether Plaintiff "exercised his rights as listed under N.C. Gen. Stat. § 95-241(a)" and whether "the alleged retaliatory action was taken because the employee exercised his rights under N.C. Gen. Stat. § 95-241(a)." *Id.*

Plaintiff contends he exercised his rights as listed under N.C. Gen. Stat. § 95-241(a) by "initiat[ing] any inquiry. . . with respect to" OSHA. N.C. Gen. Stat. § 95-241(a). Specifically, Plaintiff states that he initiated an inquiry when he "submitted a proposed plan that would provide certification of the crane operators in compliance with the upcoming regulatory change." Plaintiff further contends, "[t]hereafter, [Plaintiff] complained to his [Defendant Atlantic] and [Defendant Duke Energy] supervisors weekly of [Defendants] failure to begin certifying crane operators." Plaintiff's complaint alleges the following with regard to Plaintiff's initiation of an inquiry pursuant to N.C. Gen. Stat. § 95-241(a):

> 34. Defendants' decision to terminate [Plaintiff's] employment was in retaliation for his making complaints and providing information with regard to an ongoing workplace situation with regard to Occupational Safety and Health issues affecting nuclear power facilities in North Carolina operated by Defendants, including but not limited to the McGuire Nuclear Facility.

> 35. By communicating with his supervisors on numerous occasions concerning safety and health and training issues, and with the Duke Ethics Hotline, [Plaintiff] exercised his rights as listed under N.C. Gen. Stat. § 95-241(a).

Our Courts have not defined or addressed what it means to "initiate [an] inquiry" pursuant to N.C. Gen. Stat. § 95-241(a) with respect to OSHA.[2] *Id.* We find the logic of several decisions of federal courts persuasive authority as to the definition of initiating an inquiry. *See State v. McDowell*, 310 N.C. 61, 74, 310 S.E.2d 301, 310 (1984) (stating that federal decisions, with the exception of the United States Supreme Court, are not binding upon this Court; however, State courts should treat "decisions of the United States Supreme Court as

---

2. Plaintiff does not allege or argue that he "[f]ile[d] [or threatened to file] a claim or complaint," or that he "testif[ied] or provide[d] information[.]" N.C. Gen. Stat. § 95-241(a)(1). Rather, Plaintiff contends that he exercised his rights under N.C. Gen. Stat. § 95-241(a) by "initiat[ing] [an] inquiry[.]" Therefore, we limit our review to the question of whether the allegations in Plaintiff's complaint are sufficient to set forth a cause of action pursuant to REDA, because Plaintiff "initiat[ed] [an] inquiry[.]"

binding and accord[] to decisions of lower federal courts such per-suasiveness as these decisions might reasonably command"); *see also Signature Dev., LLC v. Sandler Commer. at Union, L.L.C.*, ___ N.C. App. ___, ___, 701 S.E.2d 300, 307 (2010) (stating, "[a]lthough, as an unpublished case, [it] does not establish binding legal precedent, we are persuaded by [the] Court's reasoning in that case").

The United States District Court for the Middle District of North Carolina addressed the question of what it means to initiate an inquiry pursuant to N.C. Gen. Stat. § 95-241(a) in the context of OSHA in *Jurrissen v. Keystone Foods, LLC*, 2008 U.S. Dist. LEXIS 63901, 15-16 (2008). The Court stated:

> As noted, REDA states that no person shall take any retaliatory action against an employee because the employee "file[s] a claim or complaint, *initiate[s] any inquiry, investigation, inspection, proceeding or other action, or testif[ies] or provide[s] information to any person with respect to . . . [OSHANC]."* N.C. GEN. STAT. § 95-241(a) (emphasis added). By its plain language, it is clear that REDA does not limit protected activities to the sole act of filing a formal claim under OSHANC. At the other end of the spectrum, however, courts have held that merely talking to an internal supervisor about potential safety concerns is not a "protected activity" under REDA.

*Id.; see also, e.g., Delon v. McLaurin Parking Co.*, 367 F. Supp. 2d 893, 902, *aff'd*, 146 Fed. Appx. 655 (2005) ("The complaint that Plaintiff made to [a manager] [i]s not . . . protected under REDA[;] [r]ather, it was merely a complaint to a manager about a supervisor"); *Cromer v. Perdue Farms, Inc.*, 900 F. Supp. 795, 801 n.6 (1994), *aff'd*, 1995 U.S. App. LEXIS 25327 (1995) (explaining that "North Carolina has never recognized a cause of action for wrongful discharge in favor of employees who orally complained to their employers about unsafe working conditions" and noting that the plaintiff "did not initiate a complaint with the Occupational Safety and Health Review Commission or threaten to initiate any such complaint"); *Whitings v. Wolfson Casing Corp.*, 173 N.C. App. 218, 222, 618 S.E.2d 750, 753 (2005) (holding the plaintiff's act of requesting that her employer pay for a medical evaluation of a work-related injury was not a protected activity under the North Carolina Workers' Compensation Act).

In *Jurrissen*, the plaintiff's complaint contained the following allegations that the defendant retaliated against the plaintiff:

Defendant retaliated against Plaintiff "for the exercise of his rights of protection under [REDA], specifically that he 'provide[d] information with respect to' [OSHANC]"; that "Defendants' decision to terminate Plaintiff's employment was, *inter alia*, in retaliation of his providing information with respect to an ongoing investigation with regard to Occupational Safety and Health issues affecting [Defendants'] facility in North Carolina"; and that "[b]y communicating with Defendants' auditor regarding food and occupational health and safety, Plaintiff exercised his rights as listed under N.C. Gen. Stat. 95-241(a)."

*Jurrissen*, 2008 U.S. Dist. LEXIS 63901, 17-18. The Court in *Jurrissen* concluded that "[t]hese allegations, drawing all inferences in favor of Plaintiff, conceivably constitute the act of 'initiat[ing] any inquiry, investigation, inspection, proceeding or other action, or testif[ying] or provid[ing] information to any person with respect to . . . [OSHANC].' " *Id.* (citing N.C. Gen. Stat. § 95-241(a)).

However, in *Delon*, 367 F. Supp. 2d 893, the Court held that a plaintiff's criticism of his supervisor to a division manager "was not one of the enumerated list that is protected under REDA[;] [r]ather, it was merely a complaint to a manager about a supervisor." *Id.*, 367 F. Supp. 2d at 902.

We believe the facts of this case are more closely aligned with *Delon* than *Jurrissen*. In *Jurrissen*, the plaintiff alleged that he specifically communicated with the defendant's internal auditor about an "*ongoing* investigation into defendant's health and safety practices." *Jurrissen*, 2008 U.S. Dist. LEXIS 63901. However, in *Delon*, there was no evidence of an investigation, and all communications were between the plaintiff and his supervisors or managers. In the present case, Plaintiff spoke only to his supervisors about his concerns regarding the certification of riggers. Plaintiff also called Defendant Duke Energy's ethics hotline; however, Plaintiff's complaint clearly states that Plaintiff called the ethics hotline to "report[] the retaliatory treatment he had been receiving"—not to report a concern regarding occupational health and safety in the context of his employment with Defendant Atlantic. We do not believe the foregoing allegations are sufficient to constitute the initiation of an inquiry pursuant to N.C. Gen. Stat. § 95-241(a). Therefore, we conclude the trial court did not err in granting Defendants' N.C. Gen Stat § 1A-1, 12(b)(6) motion to dismiss Plaintiff's REDA claim.

### B: Wrongful Discharge

**[2]** In Plaintiff's second argument on appeal, he contends the trial court erred in dismissing Plaintiff's claim for wrongful discharge. We disagree.

"North Carolina is an employment-at-will state." *Kurtzman v. Applied Analytical Indus.*, 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997), *rehearing denied*, 347 N.C. 586, 502 S.E.2d 594 (1998). "This Court has repeatedly held that in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Id.*

The doctrine of employment-at-will, however, "is not without limits[,] and a valid claim for relief exists for wrongful discharge of an employee at will if the contract is terminated for an unlawful reason or a purpose that contravenes public policy." *Ridenhour v. IBM*, 132 N.C. App. 563, 567, 512 S.E.2d 774, 777, *disc. review denied*, 350 N.C. 595, 537 S.E.2d 481 (1999) (quotation omitted). "Public policy is defined as the principle of law that holds no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Id.* at 568, 512 S.E.2d at 778 (quotation omitted). "There is no specific list of what actions constitute a violation of public policy." *Id.* However, wrongful discharge claims have been recognized in North Carolina "where the employee was discharged (1) for refusing to violate the law at the employers request, . . . . (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy[.]" *Id.* at 568-69, 512 S.E.2d at 778.

"Under certain circumstances, notice pleading is not sufficient to withstand a motion to dismiss; instead a claim must be pled with specificity. . . . One such circumstance is when an at-will employee brings a wrongful termination claim upon the theory of a violation of public policy." *Gillis v. Montgomery County Sheriff's Dep't*, 191 N.C. App. 377, 379, 663 S.E.2d 447, 449, *disc. review denied*, 362 N.C. 508, 668 S.E.2d 26 (2008) (citation omitted).

> [T]he public-policy exception was designed to vindicate the rights of employees fired *for reasons* offensive to the public policy of this State. This language contemplates a degree of intent or wilfulness on the part of the employer. In order to support a claim for wrongful discharge of an at-will employee,

the termination itself must be motivated by an unlawful reason or purpose that is against public policy.

*Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 571-72, 515 S.E.2d 438, 441 (1999) (quotation omitted). "To prevail on a claim for unlawful termination in violation of public policy a plaintiff must identify a specified North Carolina public policy that was violated by an employer in discharging the employee." *McDonnell v. Tradewind Airlines, Inc.*, 194 N.C. App. 674, 677-78, 670 S.E.2d 302, 305, *disc. review denied*, 363 N.C. 128, 675 S.E.2d 657 (2009) (quotation omitted).

In this case, Plaintiff made the following allegations in his complaint regarding his wrongful discharge:

43. Defendants' termination of [Plaintiff's] employment was for unlawful reasons and purposes that contravene the public policy of North Carolina, as contained in the North Carolina General Statutes.

44. Defendant's termination of [Plaintiff's] employment for raising the issues outline[d] above also contravenes the general policies set forth in N.C. Gen. [Stat.] § 95-126[,] *et [seq.,]* of the North Carolina General Statutes governing the occupational health and safety of North Carolina employees, including, but not limited to the important public policies of: (a) reducing the number of occupational health and safety hazards in the workplace, (b) encouraging/requiring employees to cooperate with occupational health and safety audits, inspections, and investigations.

45. Defendants' termination of [Plaintiff's] employment for raising the issues outlined above contravenes the important public policies set forth in N.C. Gen. Stat. §§ 95-240 through 95-245 that prohibit the termination of employees in retaliation for the employee's good faith expression of concern over his employer's occupational health and safety practices.

Plaintiff cites to REDA and provisions of OSHA in support of his wrongful discharge claim.

Plaintiff specifically alleges that his termination contravenes the following public policies: "(a) reducing the number of occupational health and safety hazards in the workplace, (b) encouraging/requiring employees to cooperate with occupational health and safety audits, inspections, and investigations." Defendants' alleged violations of the

foregoing policies, according to Plaintiff's complaint, stems from the following lack of action: "[Plaintiff] brought [the prospective 13 N.C. Admin. Code 07F .0901, *et seq.*] to the attention of his supervisors and proposed a process by which the operators could be trained and certified in a way that would not interfere with the operators of the plant during its busiest times[;] [Plaintiff] did not receive any response to his proposal." Other than allegations that Defendants did not accept Plaintiff's proposal for certifying operators, Plaintiff's complaint is devoid of allegations that Defendants failed to "reduc[e] the number of occupational health and safety hazards in the workplace" or "encourag[e]/requir[e] employees to cooperate with occupational health and safety audits, inspections, and investigations[.]" Plaintiff does not allege that Defendants directed him to violate any policy expressed in OSHA, or that Defendants engaged in some activity contrary to any effective law or policy expressed in OSHA. Moreover, Plaintiff does not allege that his workplace was unsafe. Plaintiff does not allege that Defendants ordered him to work in violation of 13 N.C. Admin. Code 07F .0901, *et seq.*, which required crane operators and riggers to be certified. In fact, the record shows that 13 N.C. Admin. Code 07F .0901, *et seq.*, was not effective until 1 October 2009, which was after Plaintiff's employment was terminated. Plaintiff's allegations wholly fail to show that Defendants ever violated their OSHA obligations, including 13 N.C. Admin. Code 07F .0901, *et seq.*, and Plaintiff's assertions that Defendants' termination of his employment violated law or public policy based on provisions of the administrative code that were yet to become effective does not remedy this deficiency in Plaintiff's pleadings. We do not believe that public policy required Defendants to accept Plaintiff's proposal for compliance with 13 N.C. Admin. Code 07F .0901, *et seq.* As long as Defendants complied with 13 N.C. Admin. Code 07F .0901, *et seq.*, in a timely fashion, which Plaintiff does not allege Defendants failed to do, the fact that Defendants complied with 13 N.C. Admin. Code 07F .0901, *et seq.*, by implementing a process of compliance different from the process proposed by Plaintiff does not violate public policy. Thus, Plaintiff has failed to "identify a specified North Carolina public policy that was *violated* by an employer in discharging the employee[.]" *McDonnell*, 194 N.C. App. at 678, 670 S.E.2d at 305 (emphasis added). We conclude the trial court did not err by dismissing Plaintiff's claim of wrongful discharge.

### C: Negligent and Intentional Infliction of Emotional Distress

**[3]** In Plaintiff's next argument on appeal, he contends the trial court erred in dismissing his claim of negligent and intentional infliction of emotional distress. We disagree.

To state a claim for negligent infliction of emotional distress, a plaintiff must allege that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . ., and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *rehearing denied*, 327 N.C. 644, 399 S.E.2d 133 (1990).

Intentional infliction of emotional distress requires "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). Defendants' conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency." *Lorbacher v. Housing Auth.*, 127 N.C. App. 663, 676, 493 S.E.2d 74, 81-82 (1997).

Both negligent and intentional infliction of emotional distress require that the emotional distress be severe. Defendants' conduct must "cause[] mental distress of a very serious kind." *Trought v. Richardson*, 78 N.C. App. 758, 763, 338 S.E.2d 617, 620, *disc. review denied*, 316 N.C. 557, 344 S.E.2d 18 (1986) (quotation omitted). "[S]evere emotional distress" has been defined as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson*, 327 N.C. at 304, 395 S.E.2d at 97.

In this case, only one allegation in Plaintiff's complaint describes Plaintiff's alleged emotional distress: "[Plaintiff] began to experience serious on and off the job stress, severely affecting his relationship with his wife and family members." This, we do not believe, is sufficient to state a claim for negligent or intentional infliction of emotional distress. *See Johnson*, 327 N.C. at 304, 395 S.E.2d at 97 (defining severe emotional distress); *see also Johnson v. Bollinger*, 86 N.C. App. 1, 6, 356 S.E.2d 378, 382 (1987) (affirming the trial court's dismissal of the plaintiff's claim of intentional infliction of emotional distress when the plaintiff's "complaint on its face reveal[ed] the

absence of facts sufficient" to support an element of the tort). Therefore, we conclude the trial court did not err by dismissing Plaintiff's claims of negligent and intentional infliction of emotional distress.

## D. Defamation

[4] In Plaintiff's final argument on appeal, he contends the trial court erred by dismissing his defamation claim. We disagree.

"In North Carolina, the term defamation applies to the two distinct torts of libel and slander." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 898 (2002), *cert. denied*, 540 U.S. 965, 124 S. Ct. 431, 157 L. Ed. 2d 310 (2003). "In general, libel is written while slander is oral." *Phillips v. Winston-Salem/Forsyth County Bd. of Educ.*, 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994), *disc. review denied*, 340 N.C. 115, 456 S.E.2d 318 (1995). In this case, Plaintiff's complaint alleges two written communications were defamatory.

"In order to recover for [libelous] defamation, a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Tyson v. L'Eggs Products, Inc.*, 84 N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (1987). "[T]he words attributed to defendant [must] be alleged 'substantially' in *haec verba*, or with sufficient particularity to enable the court to determine whether the statement was defamatory." *Stutts v. Duke Power Co.*, 47 N.C. App. 76, 84, 266 S.E.2d 861, 866 (1980). North Carolina courts recognize three classes of libel:

> (1) Publications which are obviously defamatory and which are termed libels *per se*; (2) publications which are susceptible of two reasonable interpretations, one of which is defamatory and the other is not, and (3) publications which are not obviously defamatory, but which become so when considered in connection with innuendo, colloquium and explanatory circumstances. This type of libel is termed libel *per quod*.

*Tyson*, 84 N.C. App. at 11, 351 S.E.2d at 840 (quotation omitted).

In the present case, we must now examine whether Plaintiff's complaint sets forth a cause of action for each of the foregoing types of libel. In Plaintiff's complaint, he alleges the following:

> 54. [Plaintiff] incorporates and realleges the allegations set forth in paragraphs 1 through 53 of the Complaint.

55. By falsely contend[ing] that [Plaintiff] intentionally falsified his time card[,] the Defendants, acting through their supervisory employees and agents, damaged [Plaintiff's] reputation and economic circumstances.

56. By reporting [Plaintiff] to the Nuclear Regulatory Commis and facilitating his being barred from nuclear plants around the country, Defendants, acting through the supervisory employees and agents, further damaged [Plaintiff's] reputation and economic circumstances.

57. These acts were undertaken with malice and for no proper purpose.

58. These acts and statements were false and known by Defendants to be false.

59. Defendants to this day have failed to cure this oral and written defamation and continue to perpetuate those defamatory allegations in these proceedings.

Plaintiff alleges two defamatory publications: (1) an email from a "Site Maintenance Lifting Coordinator" at Defendant Duke Energy to Defendant Atlantic regarding Plaintiff's allegedly falsified timesheet; and (2) a report from Defendant Duke Energy to the Nuclear Regulatory Commission barring Plaintiff from unescorted access to nuclear facilities. We must examine each of the two foregoing allegations of libel in the context of the three recognized types of libel in North Carolina.

### i: Libel *per se*

We do not believe that Plaintiff's complaint, alleging that Defendant "falsely contend[ed]" that Plaintiff "falsified his time card[,]" or reported Plaintiff to the Nuclear Regulatory Commission sets forth a cause of action for libel *per se* sufficient to survive Defendants' Rule 12(b)(6) motion. "[P]ublications or statements which are susceptible of but one meaning, when considered alone without innuendo, colloquium, or explanatory circumstances, and that tend to disgrace and degrade the party or hold him up to public hatred, contempt, or ridicule, or cause him to be shunned and avoided are defamatory *per se*." *Andrews v. Elliot,* 109 N.C. App. 271, 274, 426 S.E.2d 430, 432 (1993) (quotation omitted). Plaintiff does not put forth any allegations tending to show that Defendants' alleged defamatory publications hold Plaintiff "up to public hatred, contempt, or ridicule, or cause him to be shunned and avoided[.]" *Id.*

PIERCE v. THE ATLANTIC GRP., INC.

[219 N.C. App. 19 (2012)]

Moreover, "North Carolina cases have held consistently that alleged false statements made by defendants, calling plaintiff 'dishonest' or charging that plaintiff was untruthful and an unreliable employee, are not actionable *per se*." *Duke Power Co.*, 47 N.C. App. at 82, 266 S.E.2d at 865 (citation omitted). Therefore, we conclude the trial court did not err by dismissing Plaintiff's claim of libel *per se*.

### ii: Publications Susceptible of Two Interpretations

We further believe Plaintiff's complaint is insufficient to state a claim for defamation within the second class because the complaint does not allege that the email or report are susceptible of two meanings. *See Tyson*, 84 N.C. App. at 11, 351 S.E.2d at 840 (holding, "the complaint is insufficient to state a claim for libel within the second class because the complaint does not allege that the letter is susceptible of two meanings"). We therefore conclude the trial court did not err by dismissing Plaintiff's claim of the second type of defamation.

### iii: Libel *Per Quod*

To state a claim of libel *per quod*, Plaintiff must allege special damages. *Ellis v. Northern Star Co.*, 326 N.C. 219, 231, 388 S.E.2d 127, 134, *rehearing denied*, 326 N.C. 488, 392 S.E.2d 89 (1990). "Facts giving rise to special damages must be alleged so as to fairly inform defendant of the scope of plaintiff's demand." *Stanford v. Owens*, 46 N.C. App. 388, 398, 265 S.E.2d 617, 624, *disc. review denied*, 301 N.C. 95, ___ S.E.2d ___ (1980). We do not believe that Plaintiff's allegation that the alleged defamation "damaged . . . [Plaintiff's] economic circumstances" fairly informs Defendants of the scope of Plaintiff's demand. Therefore, we conclude the trial court did not err by dismissing Plaintiff's claim of libel *per quod* pursuant to Defendants' Rule 12(b)(6) motion.

For the foregoing reasons, we affirm the order of the trial court dismissing Plaintiff's complaint in its entirety.

AFFIRMED.

Judges HUNTER, JR. and McCULLOUGH concur.